DETRICK & HARVEY MACH. CO. OF BALTIMORE CITY v. AMERICAN FOUNDRY & MACHINE CO.

(Circuit Court, D. Maryland. November 12, 1907.)

PATENTS—INFRINGEMENT—METAL PLANERS.

The Detrick patent, No. 472,804, for a metal planer of the open-side type, and constructed to plane two surfaces of an object at the same time, which describes a machine having a side post with a vertical slideway upon which is adjusted a horizontal arm also having a slideway, and carrying a tool saddle for the tool which planes the horizontal face of the object, while a depending arm constructed integrally with such beam at the end next the post has a slideway upon which is adjusted a tool for planing the vertical face at the same time, *held* infringed by the machine of the Robinson patent, No. 783,223, which as described in the patent has the vertical cutting tool mounted upon a slideway attached to the

side of the post and entirely independent of the horizontal beam carrying the other tool, but in which, as actually constructed, such slideway, when in use, is attached to and dependent on the downwardly depending arm of such beam, without which it would be ineffective, and such construction making it substantially identical in all respects with the Detrick machine.

In Equity. On final hearing.

Chester A. Weed and Randolph Barton, for complainant.

W. W. Dodge, Marbury & Gosnell, and Carroll T. Bond, for defendant.

MORRIS, District Judge. This is a suit in equity, in usual form, for alleged infringement of a patent. The complainant is the owner of United States patent No. 472,804, dated April 12, 1892, granted to Jacob S. Detrick, for improvements in metal planers.

The patentee states:

"My invention relates to improvements in metal planing machines, whereby two surfaces of an object can be planed at the same time, and also the back movement of the platen be much more rapid than the forward, or cutting, movement."

It is only the patented devices by which two surfaces of a piece of metal can be planed at the same time which are in controversy in this suit. This is done by devices which enable the operator to apply one cutting tool to the horizontal surface of the object, and, at the same time, another tool to the vertical side. Neither of these operations was new at the date of the patent in suit, and it is upon the novelty of the combination of the devices that the patentability must rest. An expired patent to Detrick, No. 278,618, dated May 29, 1883, which became public property May 29, 1900, described an open-side metal planing machine, the object of which was to provide a planer adapted to plane pieces of work of greater width than will pass between the two sides uprights or posts of an ordinary planer. This machine of the expired patent had a single upright post of a construction which gave it great rigidity and stiffness. To the post a cross-beam was adjusted, so as to move up and down on a vertical slide on the face of the post. The cross-beam carried a tool saddle furnished with a planing tool movable horizontally on a similar slide on the face of the cross-beam. This planer of the expired patent had no second tool arranged to plane the vertical side of the object at the same time that the tool on the cross-beam was planing the horizontal surface. But it was provided that the slide on the face of the post and the slide on the cross-beam should be of the same size and shape, so that, if desired, the cross-beam could be removed and the tool saddle placed on the vertical slide on the face of the post, and could be operated so as to plane the vertical side surface of the piece of work without removing it from the platen. But the removal of the cross-beam was laborious and expensive, as it is a large and massive casting, weighing, in the larger machines, as much as 4,000 pounds. The result to be obtained by Detrick's patent of 1892, now in suit, which was applied for and granted to Detrick after the expiration of his first patent, was to avoid the necessity of removing the cross-beam when it was desired to use a vertical side tool,

and to permit a side tool being used simultaneously with the tool on the horizontal cross-beam. This he accomplished, as explained by the specification of the patent in suit, by extending from the cross-beam, at the point where it is adjusted to the post, a downwardly extending arm, and placing on the front of this extension a vertical slideway, and mounting on it another tool saddle, intended to hold the tool to do the planing on the vertical side surface of the work.

This construction is thus described in the specification of the patent in suit:

"The letter, E, designates the cross-beam, which is provided with a horizontal slideway. (e), and is vertically adjustable on the vertical slide of the rigid post. Integral with one end of this cross-beam, is a downwardly-extending part, e', having in its back a dove-tailed groove, (f), fitting the said slideway, (f), on the post, and on its front is provided with a vertical slideway, (e), * * * that is, the cross-beam, R, and the downwardly extending slideway are one solid piece and form a right angle, the said downwardly-projecting part serving to brace and sustain the cross-beam and insuring that the latter will preserve a true horizontal position when vertically adjusted."

It will be seen that the difference between the cross-beam of the expired Detrick patent and the patent now in suit consists in the downwardly-extending arm of the cross-beam, fitted to the post by the slideway at its back, and the slideway fixed upon its outer face for the purpose of a second tool as described. The infringement charged against the defendant is that its construction is the equivalent in operation of the downwardly-extending arm extending at right angles to the cross-beam, and made in one solid piece with it, and provided with a vertical slideway for a tool head. The defendant's metal planing machine is constructed in accordance with patent No. 783,223, dated February 21, 1905, granted to Hanson Robinson, president of the defendant company, and formerly a draftsman in the employ of the complainant. In its general construction it is identical with the machine of the expired Detrick patent; the difference being in the addition of a second saddle and tool intended for vertical planing. The saddle and tool have a vertical movement on a slideway attached to the upright post, but not attached directly to a downwardly projecting arm of the cross-beam. The present controversy resolves itself into the question whether the slideway on which the second saddle or tool head in defendant's machine is carried is the mechanical equivalent of the slideway on the downwardly-depending arm of the complainant's patent as claimed therein.

Robinson, in the specification of defendant's patent, states:

"The invention pertains to that class or type of metal-planing machines known in the trade as 'open-wide planers,' wherein the horizontal beam overhanging the bed and carrying the tool head is sustained wholly at one end and from one side of the bed. The present improvements are directed to a secondary or supplemental tool head, carried upon the main post or standard and wholly independent of the overhanging beam and of the tool head carried thereby. * * * In planers of this class, it is desirable that any and all adjustments of the beams and its tool head may be made without disturbing or affecting the position or adjustment of the supplemental or secondary tool head, and that each tool head shall be adjustable independently of the beam. With this primary object in view, I adopt the construction illustrated in the drawings, and which I shall now explain with the aid thereof."

The specification then describes the general construction of the horizontal planer, viz., a post or standard and the cross-beam, with its tool head or saddle, and the devices for lowering and raising the beam or guideway and for operating the tool, which are not materially different from the usual gear employed for that purpose. The specification then proceeds to describe the construction of the second tool head, intended for vertical planing, and its mechanism, and to differentiate its construction from that of the complainant's machine. The specification states:

"H indicates a vertical guide-bar, or supplemental post or standard, spaced out or set away from the main standard, O, but connected therewith, at or near its upper or lower ends. It is of a form similar to the guideway, (a), and is designed to receive, support and guide a secondary tool head, I, of the same character as tool head, E."

The specification then describes the mechanical appliances by which the tool head, I, can be made to rise or fall upward or downward on its guideway upon the face of the standard or post, C, and continues:

"Under the construction thus set forth, the beam may be raised and lowered and the tool head, E, may be shifted laterally or turned to any angle required, all without, in any manner, disturbing or affecting the tool head, I, and its tool stock and tools. Conversely, the tool head, I, its tool stock and tools, may be adjusted as desired, wholly regardless of the beam and of the parts carried thereby. In this, the present is advantageous over prior open-side planer constructions; under which the secondary tool head, I, being carried by the downwardly-extending guiding portion of the beam, necessarily partook of all movements of the beam and hence had to be adjusted whenever the beam was moved. It will be observed, too, that the beam may be wholly removed from the column or standard without disturbing the secondary tool head, I. When the beam is thus removed, the tool head, I, may be carried higher than would otherwise be possible. In other words, it may be adjusted to the top of its guide-bar, or a distance equal to the vertical measurement of the beam proper above the highest point it can reach, when the beam is in position. This is a material advantage in working upon the sides or vertical faces of an object carried by the bed or table, and it is a capability not possessed by a tool head carried upon the depending guiding portion of the beam, as has heretofore been done. A further advantage is found in the greater stability of the independent guide, H, which, being wholly independent of the beam, frees the tool head, I, from any play or vibration incident to chattering of the tools carried by tool head, E, or to other causes. * * *

"In the practical and continued use of machines of this sort—that is to say, open-side planers—in which the beam is supported wholly from one side or end, the wear upon the vertical guideway is uneven, and in time there is a tendency of the beam to drop or sag at its outer end. This necessitates 'truing up,' which is commonly done by dressing or truing the guideway of the post and setting up the gib or gibs of the guiding portion of the beam. In order to render open-side planers capable of employing a side head and tool and permitting such tool to be adjusted to a point close beneath the horizontal position of the beam proper, two plans have heretofore been adopted. According to one of these plans, the beam is constructed with an upwardly-extending guiding portion but with little or no depending portion, and the side tool head or saddle is placed directly upon the front of the post or standard, as has for many years been done with the common two-post planers. Under the other plan, the beam is cast with a long downwardly-extending guiding portion, integral with the beam proper, fitted to the guides or ways in the front of the post or standard and in turn having formed upon the front or outer face or second guideway, to receive the side tool head or saddle. This latter construction is objectionable in that the wear of one vertical guideway throws it out of parallel or alignment with the other vertical guideway.

It is further objectionable because the chattering or vibration of either tool is transmitted through the integral beam to the other tool; but it is especially objectionable because it is impossible to adjust the beam vertically without thereby moving the side head and, assuming it to be properly adjusted, destroying the adjustment thereof. By making the guide-bar or supplemental post, H, separate from the main post, and wholly independent of the beam, each vertical guideway is rendered independent of the other, and, in the event of it becoming necessary to redress or true either the other is not thereby affected. Again, being independent, it is comparatively easy to true and fit each separately, the supplemental post or guideway, H, being capable of adjustment relatively to the main post and the beam. To permit this to be done, clearance is left between the supplemental post or guideway, H, and the beam, and its depending portion. * * * By the use of the supplemental post or standard, the beam-sustaining effect of the depending guiding portion thereof is retained and availed of, while the disadvantages of having the side tool head mounted upon the beam or any portion thereof are completely overcome. A larger amount of work can be performed, in a given time, with a machine constructed as here set forth, because of the independence of adjustment of the beam and the side tool head, permitting the side tool to continue cutting while the beam is being adjusted, and permitting the upper tool to continue cutting while the side tool head is being adjusted, there being no interference of one with the other."

The claims of the Detrick patent now in suit involved in this controversy are:

"1. In a metal planer, the combination of the base or frame, a reciprocating platen, a post fixed rigidly at the side of the platen and having a vertical slideway, f, and a cross-beam, E, having at one end a downwardly-projecting part, E', which fits the said vertical slideway of the post, as and for the purpose set forth.

"2. In a metal planer, a cross-beam provided with a horizontal slideway and having at one end a downwardly-projecting part provided with a vertical slideway for a tool head, as set forth.

"3. In a metal planer, the combination of a cross-beam provided with a horizontal slideway and having at one end a downwardly-projecting part provided with a vertical slideway, a movable head, I, on the said horizontal slideway, and a movable head, I', on the vertical slideway, as set forth.

"4. In a metal planer, the combination of a cross-beam provided with a horizontal slideway and having at one end a downwardly-projecting part provided with a vertical slideway, a movable head, I, on the said horizontal slideway and a movable head, I', on the vertical slideway, screw-shafts on the cross-beam and a vertical screw on the downward-projecting part, said vertical screw having a miter-pinion, o', a horizontal shaft, p, also having a miter-pinion, and a vertical rack, H, which imparts motion, as described, to the screw-shafts on the cross-beam and also the vertical screw on the downwardly-projecting part."

It thus appears that an essential feature of the construction described and claimed in the complainant's patent is a downwardly-projecting arm of the cross-beam, made in one solid piece, on the front of which is placed a vertical guideway for the side tool head, while in the defendant's patent the guideway is affixed to a separate supplemental standard, fastened to the top and bottom of the main standard, and having no direct connection with the downwardly-projecting part of the cross-beam.

We must start with the concession that the original Detrick patent had expired and his construction of an open-side planer had become public property. The object of both complainant and defendant was to add to the planer of the expired patent a supplementary side tool

adjustable to plane the vertical edge of an object which was being planed by the main tool on its horizontal surface. The use of a downwardly-extending arm, constructed merely to brace and sustain the cross-beam and to insure its maintaining a true horizontal position when adjusted, would not, considering the state of the art, have required invention. Some increase of width of the cross-beam, at the point of its bearing on the post, to secure its holding its place when subjected to the great strain of a deep cut by the tool into the iron to be surfaced, appears in other similar planers, and in the Detrick machine of his expired patent, in which, the testimony discloses, the increase in the width of the cross-beam was as much as 13 inches, at its bearing on the post. I do not find that the increase in the length of the arm merely to give more bearing on the post required invention; and, if the first claim of the patent in suit is construed to that restricted meaning, I should not hold it to be valid. But in the patent in suit the downwardly-depending arm is much longer than any previous structure and longer than required for rigidity when operated without a side tool, and the substance of the real invention disclosed by the patent in suit is the use of the downwardly-depending member for carrying a slideway for a side tool. By this method of mounting the side tool, the tool had its bearing upon the downwardly-projecting arm, and the downwardly-projecting arm had its bearing on the post, so that the side tool was rigidly braced against vibration when in operation. In metal planers, the first consideration must be that the tool which does the cutting shall be so rigidly held and braced that it will not vibrate and chatter under the enormous strain of driving the cutting tool through a cut in the metal object being surfaced. If the defendant accomplishes the same result as is accomplished by the patent in suit, and in precisely the same way, then he has taken the substance of complainant's invention. The two machines are substantially identical up to the point where the slideway of the side tool is constructed. In the patent in suit the slideway is affixed directly in front of the downwardly-depending arm. In the defendant's machine the slideway is affixed in front of the downwardly-depending arm fastened to the post at the top and bottom, and in defendant's patent specification is said to be spaced out from the post so as to allow a clearance to be left between the guideway and the downwardly-extending arm of the cross-beam. The fact as to whether or not such a space or clearance exists when the defendant's machine is in operation, and whether or not the practical operation of defendant's machine requires that it shall not exist, are very vital matters in this case.

I find from the testimony that the defendant's machine, as constructed, is made with the surfaces of the post and slideway, which are next each other smoothly surfaced so as to admit of a tight engagement, and when not in operation the clearance between was not greater than fifteen ten thousandths of an inch (.0015). I find that it was demonstrated, by careful experiment, that when in operation, as constructed, the guideway of the side tool of defendant's machine takes a firm and direct bearing on the downwardly-depending arm of the cross-beam, and was clamped to it in all respects as thoroughly and effectively as if the guideway was affixed directly upon the face of the

arm. This I find to have been further demonstrated by the fact that if the cross-beam, with its downwardly-depending arm, was removed, so that the guideway did not have the arm to bear against, it vibrated so badly that the machine was not effective for the purposes for which it was built, and further by the fact that if the depending arm was present, and the top and bottom fastenings to the post were released, the guideway, by reason of its tight engagement with the post, acted as well as when it was tightly affixed to the post at the top and bottom. These carefully made tests and experiments show that the efficiency of defendant's machine, as constructed, depends on the fact that the guideway of the side tool bears against the depending arm of the cross-beam, and is constructed so as to bear against it, and in operation becomes firmly clamped to it, and that without that bearing it would be ineffective and without practical value for the purposes for which it is designed. I find from these facts that the side tool guideway of the defendant's machine, although in the specification of defendant's patent it is described as being separated from the depending arm of the cross-beam by a clearance, is not so made, but is made so as to bear on the downwardly-depending arm and be clamped with it, and therefore is in effect mounted on the depending arm itself. The intervention of any number of layers of metal between the guideway and the depending arm would not constitute a noninfringing construction, provided the guideway was, in effect, mounted upon the depending arm, and was in firm and tight contact with it when in operation. The clearance which is shown in actual construction to be only a few thousandths of an inch, was not mentioned in the original specification filed with the application for defendant's patent, but was made as an amendment, after testimony for the complainant was taken in this suit. It would appear, therefore, that it was inserted to distinguish defendant's device from complainant's, but in actual construction and operation there is practically no clearance, but a tight, firm bearing of one part upon the other.

I am not called upon in this suit to determine whether or not the device of the defendant's patent, by which the side tool head is unaffected by the raising or lowering of the cross-beam and the side tool head can be raised or lowered independently of the downwardly-projecting arm of the cross-beam, is a patentable improvement upon the complainant's patented machine, and I have not considered that question.

I am of opinion that the complainant's patent is infringed by the defendant's machine as to claims 2, 3, and 4, and, as to the first claim, it is infringed in so far as defendant uses the downwardly-projecting arm of the cross-beam as a bearing for the guideway of the side tool head.